State vs. Harris.  ·

---

## No. 14,273.

### STATE OF LOUISIANA VS. VINCENT HARRIS.

#### SYLLABUS.

1. Where a juror is challenged for cause by the State, and the challenge is sustained over the objection of the accused, the latter has no legal ground of complaint where his bill of exceptions does not show he had exhausted, or did exhaust, before the jury was made up, his peremptory challenges, and, in consequence, he had been compelled, later, by reason of the earlier action of the court in sustaining the objection of the State to the juror in question, to accept an obnoxious juror.

2. A ruling of the trial judge that certain testimony offered by the accused is irrelevant will not be disturbed where nothing appears in the bill of exceptions exposing or explaining the connection necessary to show its relevancy.

3. Declarations made by a defendant in his own favor, unless part of the *res gestae*, are not admissible in his behalf.

APPEAL from the Eleventh Judicial District, Parish of Natchitoches—*Porter, J.*

*Walter Guion,* Attorney General, and *W. A. Wilkinson,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Jack & Fleming,* for Defendant, Appellant.

The opinion of the Court was delivered by

BLANCHARD, J. Defendant appeals from a conviction of murder without capital punishment, and a sentence of life imprisonment at hard labor.

The first bill of exceptions recites that a juror on his *voir dire* was asked, on behalf of the prosecution, "if he would require a higher degree of circumstantial evidence to convict than positive evidence of eye witnesses." He answered he would, and was thereupon challenged for cause. Over the objection of defendant the challenge was sustained, the trial Judge stating:

I explained to the juror that the degree of proof which the law required was that which was sufficient to satisfy the mind beyond a reasonable doubt, and that it made no difference whether this proof was supplied by circumstantial evidence or direct evidence. Notwithstanding which the juror persisted in declaring that he would require a higher degree of proof in a case of circumstantial evidence than in other cases.

It is unnecessary to analyze this ruling of the Judge to ascertain whether it be correct or erroneous, in view of the fact that the bill of exceptions does not disclose defendant had exhausted, or did exhaust before the jury was made up, his peremptory challenges, and, in consequence, he had been compelled, later, by reason of the earlier action of the court in sustaining the objection of the State to the juror in question, to accept an obnoxious juror.

In State vs. Aarons, 43 La. Ann. 406, where the defense was that the trial Judge had, for cause, erroneously sustained certain challenges to jurors by the State, this Court said:

The accused has no legal ground of complaint unless the ruling in the rejection of a juror worked him an injury in the selection of a juror obnoxious to him on legal grounds, after the exhaustion of his peremptory challenges.

See also State vs. Creech, 38 La. Ann. 481; State vs. Breaux, 104 La. 541.

The complaint of the second bill of exceptions is that defendant was not permitted, on cross-examination of a witness for the State, to show that the woman killed was a common prostitute and kept a public house.

The Judge recites as reasons for exclusion that:

The fact that the deceased was a common prostitute, and that she kept a public house, were utterly irrelevant to any of the issues presented.

Defendant urges error, because, on direct examination by the State, the witness had testified that two or three days before the homicide was committed the accused had told him he had been endeavoring to get the deceased to consent to sexual intercourse with him, and that he intended to make one more effort. In view of this, it is urged that defendant should have been permitted to show the deceased was a lewd woman and would not probably have declined his solicitations in this regard.

There might be force in this objection if the bill of exceptions enlightened us as to the object or reasons of the State in putting in the evidence recited.

Was the State seeking to show a motive for the crime on part of the accused, viz.: that he killed the woman because she refused to yield to his embraces? If so, the bill should have so stated. It is absolutely silent on the point. It stops short at the words "and that he intended to make one more effort."

It may be the testimony was offered for the purpose of showing motive; defendant in his brief states it was; but outside of this statement in the brief (which is not the proper place to *inform* the Court of it) we are left to conjecture that such was the object of the State.

Conjecture does not warrant the serious action of reversing the verdict in this case. Being unapprised by the bill as to the object the State had in proving what it did, we cannot say the Judge erred in his ruling denying the defense the right to show the deceased was a lewd and abandoned woman.

The testimony was irrelevant, as the Judge ruled it was, unless offered to rebut or weaken evidence that had been allowed to go in to show motive. There is nothing in the bill to show defendant offered it for that purpose. *Non constat* that the Judge would have ruled the evidence sought to be admitted was "utterly irrelevant to any of the issues presented," had it been offered to rebut or weaken previous testimony adduced by the State to show motive.

From the third and last bill of exceptions we learn that a witness for the State testified, in substance, that on the morning following the homicide, certain parties were engaged in examining and tracing footprints leading from the house of the accused to that of the deceased and

back again; that the accused, from a position in the rear of the gin house near the house of the deceased, witnessed this movement; and that, taking alarm, he fled, though no one as yet had charged him with the crime, running across the field in the direction of the spot some three miles away, where he was later come up with and arrested by parties who had gone in pursuit. It further informs us that this testimony was offered by the State as a circumstance—the flight of the accused—tending to show, with other circumstances, guilt, and that, to rebut and overcome the presumption arising from said alleged flight, defendant tendered certain witnesses, named, to show that, instead of fleeing, he (defendant) had gone to the place of residence of the witnesses offered and notified them of the fact that the woman had been killed by some one, and requested them to go to the place where her corpse lay and render such service as the occasion might require; that one of the parties thus requested did go; that it was at the place of residence of these witnesses, and just after informing them of the homicide and making the request alluded to, he (defendant) was arrested by the parties who had gone in pursuit of him; and that he intended further to prove by the witnesses what he had said to them at the time he called upon them—this to the end of showing that his act was not one of flight, but a mission of kindness, the parties thus notified being connections or friends of the deceased.

The State objected to this testimony and was sustained by the trial Judge, who recites at length the facts and incriminating circumstances leading up to the flight of the accused and his subsequent arrest, and tells us the accused, himself, was permitted to testify that his object in leaving the place where the killing occurred, while the officer conducting the inquest was engaged in tracing the tracks of the supposed murderer, was to notify the relatives of the deceased of her death, and the witnesses he offered were permitted to testify that he did tell them the deceased had been killed. But, besides this, the Judge informs us the accused undertook to testify that a relative of the deceased, who lived on the same place with the latter, and who was not summoned or offered as a witness, had, just prior to his alleged flight, requested him to go at once and notify the relatives who lived on the other and adjoining plantation; that this was objected to by the State as hearsay and as a self-serving declaration by the accused, and was excluded as such, as was, also, the testimony sought to be elicited from the witnesses the accused tendered as to the statements made to them by the accused

to the effect that he had been requested by the relative of the deceased to notify them of the latter's death.

It will be observed that the bill of exceptions under consideration *names certain witnesses* who were offered by the defense to prove certain alleged facts.

The inquiry, therefore, must be confined to a consideration of whether or not the Judge's ruling was correct in not permitting the witnesses thus named to give the testimony they were offered to give.

The Judge states, in his ruling, the accused undertook to testify that a relative of the deceased had, just prior to his alleged flight, requested him to go at once and notify the relatives who lived on the other plantation, and that on objection by the State, he declined to permit this statement to be made by the accused.

We are of the opinion this ruling was erroneous; that it was competent for the accused to give in evidence such statement; and if this had been included in the bill of exceptions, if the accused had been named in the bill as one of those witnesses called by the defense to testify and whose testimony had been excluded and against the exclusion of which the bill had been reserved, we would reverse this verdict and remand the case.

But the bill does not name the accused as one of those witnesses, to the exclusion of whose testimony it was taken. It names only Severin Sauville, Henry Butler and Susan Bush, and it was evidently reserved only to the exclusion of *their* testimony.

So, it must be held that no objection, legally presented, is before us relating to the Judge's ruling in regard to the testimony of the accused adverted to.

The ruling denying the defense the right claimed, to prove by the witnesses Sauville, Butler and Bush what the accused said to them at the time he came to where they were upon the other plantation, was correct. Whatever the accused said to them on that occasion is to be considered a self-serving declaration on his part and inadmissible.

In this ruling the learned Judge kept in line with the law governing and refusing the introduction by an accused person of his own declarations or statements not forming part of the *res gestae*. Wharton's Crim. Ev., 9th ed., Sections 690, 691; State vs. Thomas, 30 La. An. 600; State vs. Gonsoulin, 38 La. An. 459.

Judgement affirmed.

Mr. Justice Monroe dissents.

Rehearing refused.